THE PEOPLE OF THE STATE OF NEW YORK, Plaintiffs in Error, *v.* JAMES A. COLE, Defendant in Error.

It is error to suffer to go to the jury any evidence given by a witness on direct examination for the people, where by sudden illness or by death of such witness, or other cause without the fault of and beyond the control of the prisoner, he is deprived of his right of cross-examination.

Accordingly, on the trial of the prisoner for grand larceny, the wife of the prosecutor, having giving material evidence in behalf of the people on her direct examination by the district attorney, fainted away, and went into convulsions immediately after such direct examination was closed, and before the prisoner had any opportunity of cross-examining her, and so remained until the close of the trial.—*Held,* the court having refused either to strike out her testimony or adjourn the trial until she should become able to bear cross-examination, or to discharge the prisoner, that it was erroneous to permit her evidence to go to the jury. *Kissam* v. *Forest* (7 Hill, 463), criticised

Where the prisoner claims that the taking of the husband's personal property was with the consent of the wife, and therefore not larcenous, it is for the jury to say, from all the circ. stances connected with the transaction, as the knowledge by the prisoner of the close vicinity and near return of the husband to the place of taking, and that the property was owned by the husband, and not the wife, whether the prisoner received the property from the wife, believing that she had any right or authority to deliver it. And it is not necessary to render such taking larcenous, that the property should be appropriated to facilitate adulterous intercourse with the wife. GROVER, J.

(Submitted January 8th; and decided January 24th, 1871.)

ERROR to the late General Term of the Supreme Court in the fifth district, to review the reversal by that court of a conviction of the defendant in error of grand larceny, at the Jefferson County Sessions, on the 15th September, 1869.

The prisoner was charged with stealing from the prosecutor, Adams, a government bond for $500. The bond was in a bureau drawer, in the house of Adams, and was taken while he was out of the house milking the cow. It appeared that the wife of Adams was present when the bond was taken. Mrs. Adams swore on her direct examination that the prisoner, while her husband was out milking, came into the dining-room where the bond was, and said she must let him have it. That she told him she could not, and that, if he wanted it, he must ask her husband, that it was not hers. That the prisoner then said that the husband would not let him have it, if he asked him; that he must have it, and that unless she gave him the bond he would tell her husband of their improper intimacy. That thereupon she "got the bond out of a drawer, in a box in a morocco case, and laid it

on the bureau, and the prisoner took it and carried it away with him.

The witness, at the close of her direct examination, was taken with fainting fits, and soon went into convulsions. It was conceded that during the whole of the remaining part of the trial she was entirely unfit to be cross-examined.

The prisoner's counsel called on the district attorney to produce her for examination, and moved that her evidence be stricken out, asked a postponement of the trial until she should recover, and asked that the prisoner be discharged. All these requests were denied by the court, and he permitted the evidence given by Mrs. Adams to be submitted to the jury. The prisoner declined to give any evidence, and moved for his discharge, on the ground that there was not sufficient legal evidence to convict him. He also requested a charge that in the absence of evidence of improper intercourse between him and Mrs. Adams, there was no proof sufficient to constitute larceny. This was refused by the court.

The prisoner was convicted and sentenced to State prison for five years.

*P. C. Williams* (district attorney), for the plaintiff in error, cited Bishop's Cr. Law, vol. 2, § 814; Wharton's Cr. Law, § 1700; 1 Colby's Cr. Law, p. 664; 2 Bishop's C. L., §§ 855–6; Wharton's C. L., §§ 1802–6; *People* v. *Schuyler* (6 Cow., 572); 3 Green L. Evi., § 158; *Forest* v. *Kissam* (7 Hill, 463).

*Wynn & Porter*, for the defendant in error, cited *Kissam* v. *De Forest* (25 Wend., 651); *State* v. *Underwood* (6 Ired., 96); 12 J. R., 299; 1 P. Wms., 414; 2 Caines R., 85–7; 15 J. R., 286–292; 5 Binn., 488.

GROVER J.   The counsel for the defendant in error, insists that the court erred in holding that he could be convicted of larceny of the bond, notwithstanding the evidence showed that he took it with the consent of the wife of the owner. This ruling was clearly right. The evidence proved that

the prisoner knew that Mr. Adams and not his wife owned the bond. That Mr. Adams was, to his knowledge, in the immediate vicinity of the house. That he would return to it after finishing milking, which would occupy but a short time. Under these circumstances, it would be scarcely too much to say that the prisoner knew that his wife had no authority to dispose of his property, especially of a bond of $500. Certainly, it was not erroneous to submit the question to the jury, whether, upon all the evidence, the prisoner believed that the wife had any such right, and to instruct them that the wife having no such right and the prisoner not believing that she had any, that her consent to his taking the bond furnished no defence for him. That, if he took it with the felonious intent of defrauding Mr. Adams of his property therein, he was just as much guilty of larceny, although Mrs. Adams knew of and consented to his taking of it, as though he had taken it without such knowledge and consent. The true inquiry is, whether, when the prisoner took the bond, he intended thereby wrongfully to defraud Adams, the owner, of his property therein, or whether he believed his taking was lawful, for the reason that Adams had given authority to his wife to consent to such taking, and that she gave her consent pursuant to such authority. It was upon this principle that the prisoner was convicted in *People* v. *Schuyler* (6 Cowen, 572). It was not that the intended improper intercourse by the prisoner with the wife made the taking by the prisoner of the husband's property, with the consent and assistance of the wife, larceny, but this fact showed conclusively, that the prisoner knew that the taking was against the will of the husband, and upon proof of the further fact, that it was with intent to deprive him of his property, the commission of the crime was established. Any other evidence that satisfies the jury that the prisoner knew the taking was against the will of the husband, although with the consent of the wife, will show him guilty of larceny, equally with proof that the property was taken to facilitate adulterous intercourse with the wife. The evidence was ample to submit to the jury, for

them to determine whether the prisoner, at the time he took the bond, did not know that such taking was against the will of Mr. Adams, the owner, and with the fraudulent intent to deprive him of his property, with instructions, that in case they found the affirmative of these facts, they should find the defendant guilty, notwithstanding the consent of the wife to such taking. It will be seen that I should have found no difficulty in sustaining the conviction in the present case, had not the witness, Mrs. Adams, been sworn at all. The other evidence was ample, if believed by the jury, to authorize the conviction, but this does not relieve the case from difficulty. Mrs. Adams was sworn and examined in chief, and upon such examination gave material evidence against the prisoner, and before the prisoner had had any opportunity for cross-examination, fainted away, and after rallying therefrom, became so severely ill as to render her cross-examination impossible. This evidence against the exception of the prisoner was submitted to the consideration of the jury. This evidence may have injured the prisoner; and if incompetent against him, his request that it should be struck out and withdrawn from the jury should have been complied with. The question presented is of rare occurrence, upon which there has been but little judicial authority. The only case in this State involving the question is that of *Kissam* v. *Forest* (25 Wendell, 651). In this case, upon trial before referees, at the close of the direct examination of a witness, the referees proposed an adjournment, to which the parties consented. Before the adjourned day the witness died. The referees disregarded the testimony, and the Supreme Court affirmed the judgment. The rule at common-law was discussed, and the authorities examined, and the conclusion arrived at that the rule was that no evidence should be admitted but what was or might be under the examination of both parties. That this was the common-law rule is shown from the authorities cited; and the reason upon which it was founded was, that *ex parte* statements were too uncertain and unreliable to be considered in the investigation of controverted facts, and

should not therefore be received as evidence. The rule of the civil law is different. In those countries where the latter system prevails, the testimony of witnesses is often taken in secret, and the party to be affected thereby often kept in ignorance of what it is until too late to controvert it by counter testimony. The great superiority of the common-law rule is obvious, and that should be adhered to, although in some cases there may be an apparent hardship. No injustice is done to the party seeking to avail himself of the evidence to require, that, before its admission, its truth shall be subjected to such tests as the experience of ages has shown were necessary to render reliance thereon at all safe, and where this has been prevented without any fault of the adverse party, to exclude the evidence. *Forest* v. *Kissam.* (*supra*) was reversed by the Court for the Correction of Errors. (7 Hill, 463.) In the latter court, the chancellor and two senators gave opinions, to the effect that the testimony ought to be considered for what it was worth, although there had been no opportunity for cross-examination, the witness and the party introducing him being wholly free from fault. Some senators gave opinions for reversal, upon the ground that the party, by consenting to the adjournment at the close of the direct, had waived the right of cross-examination. Under these circumstances, it is impossible to determine upon what ground the reversal was placed by the majority of the court, and the case is consequently no authority. The chancellor cites some cases, showing that in chancery the direct examination has been received where there has been no opportunity to cross-examine. The rule in chancery is entitled to but little weight upon the inquiry as to what it is at common-law, for the reason that the practice and rules in chancery were to a great extent derived, not from the common, but from the civil law. The mode of examination of witnesses in chancery was entirely different from that at common-law. My conclusion is, that, both upon principle and authority, the testimony of Mrs. Adams was incompetent.

The judgment of the Supreme Court, reversing that of the Sessions, and awarding a new trial, must be affirmed.

All the judges concurring, order affirmed.