CALHOUN v. COMMONWEALTH TRUST CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. March 6, 1908.)

1. DEPOSITIONS—SUPPRESSION—GROUNDS—REFUSAL TO ANSWER QUESTIONS.
   A deposition may be suppressed for the refusal of a witness examined on commission to answer proper and material questions put to him on cross-examination, though that is not one of the grounds stated for the suppression of depositions in Code Civ. Proc. § 910.

2. SAME—MOTION TO SUPPRESS.
   Where a deposition is claimed to be improper, a motion may be made to suppress the same in advance of the trial.

3. SAME—SUPPRESSION IN PART.
   Where the refusal of a witness, whose testimony is being taken by deposition, to answer proper questions, has been due to no act or objection of the party calling him, the whole of the witness' deposition should not be suppressed on that ground, unless it clearly appears that the questions to which answers were refused were material.

4. SAME—EVIDENCE—MATERIALITY.
   Plaintiff sued for damages for breach of a contract for the sale of certain corporate bonds and stock, claiming that he was prevented from making the sale by certain acts of defendant. In order to show that plaintiff would have succeeded in selling the bonds, he took the deposition of an English stockbroker, who testified that he had considered plaintiff's proposition, and that witness and some other persons were disposed to look with favor thereon, but that no decision to purchase was arrived at; the matter being dropped when witness learned that the bonds were being offered from other sources at a less price than they were offered by plaintiff. When asked on cross-examination to give the names of the persons and companies to whom he presented the proposition to purchase the bonds, witness declined to do so, not by reason of any objection of plaintiff, but because witness did not care to give the names of his clients. *Held*, that the names of such persons were not material, and that defendant was not entitled to have the witness' deposition quashed because of such refusal.
   McLaughlin and Clarke, JJ., dissenting.

Appeal from Special Term.

Action by John C. Calhoun against the Commonwealth Trust Company of New York. From an order suppressing depositions of witnesses, plaintiff appeals. Reversed, and motion to suppress deposition of one witness denied.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and SCOTT, JJ.

Charles E. Kelly, for appellant.

D. Cady Herrick, for respondent.

SCOTT, J. The plaintiff appeals from an order suppressing the deposition of two witnesses who were examined in England upon an open commission. One of the witnesses has since been re-examined, and the appeal therefor relates only to the deposition of one William Trotter. The plaintiff sues for $825,000 damages. He alleges: That the defendant had been given possession and control and the exclusive right to sell $4,250,000 of the bonds of the United States Shipbuilding Company, and also the right, as an inducement to said sale, to give shares of the preferred and common stock of said company; the said bonds being part of an issue of $16,000,000. That defendant entered into a contract with plaintiff, whereby it agreed to put firmly in his hands, for sale abroad, $3,000,000 of said bonds, and further agreed with him that the remainder of said bonds were and would remain pooled, and would not be sold or negotiated for less than 95 per cent. of their par value. That plaintiff should receive for his services the difference between 90 and 95 per cent. of said par value of the bonds sold by him, and, in addition thereto, preferred and common stock of the shipbuilding company to the extent, as to each class of stock, of 25 per cent. of the par value of the bonds sold, and that said stock was and would remain pooled, and would not be sold at less than $65 per share for preferred stock and $25 per share for common stock. That plaintiff went abroad, and was engaged in selling and endeavoring to sell said bonds, and would have sold at 95 per cent. the $3,000,000 of bonds intrusted to him for sale had it not been for certain acts done by defendant in violation of its contract. This breach consisted, as alleged, in the sale by defendant to certain persons in New York of all of the shipbuilding bonds in its possession, including those intrusted to plaintiff for sale, at a price far below 95 per cent.

To establish his case, the plaintiff seeks to show, by certain witnesses resident in England, that he had made such progress with his attempts to sell the bonds that he would have succeeded in disposing of all of the $3,000,000 worth if the sale had not been prevented by the acts of which he complains. The William Trotter, whose deposition it is sought to suppress, and who is apparently a very important stockbroker in London, testified as to his interviews with plaintiff, and as to certain negotiations which he entered upon with a view to placing the bonds. The witness testified that, from the statements made to him by plaintiff, he was favorably impressed with the proposition to buy the bonds, and placed the matter before some of his clients, trust

companies and others, some of whom expressed an inclination to participate in the purchase if upon further investigation the witness decided to go in himself. He testified very positively, however, that no decision was arrived at by himself or any of those whom he consulted either as to whether any bonds should be taken, or, if any, how many, except that one trust company, the name of which he could not recollect, agreed to take $100,000 of the bonds if the sale went through. The witness appears to have answered the questions put to him fully and with great frankness, until he was asked upon cross-examination to give the names of the persons and companies to whom he presented the proposition to purchase the bonds. This he declined to do, not by reason of any objection made by plaintiff, but for the purely personal reason that he did not care to give the names of what he called his clientele, explaining that the matter had come to nothing, not even to a definite offer on the part of any one to take bonds. He testified that he dropped the matter when he learned that bonds were being offered from other sources at a less price than they were offered by plaintiff. Although the refusal of a witness examined on commission to answer proper and material questions put to him upon cross-examination is not one of the grounds stated in section 910 of the Code of Civil Procedure, it is well settled that a deposition may be suppressed for that reason (Goldmark v. Met. Opera House Co., 67 Hun, 652, 22 N. Y. Supp. 136), and it is proper to make a motion to that effect in advance of the trial as the defendant has now done (Strum v. Atl. Mut. Ins. Co., 63 N. Y. 77–87; Wright v. Cabot, 89 N. Y. 570). In cases like the present, however, where the refusal to answer questions has been due to no act or objection of the party who calls the witness, the whole deposition should not be suppressed, unless it can be clearly seen that the questions to which answers were refused were material. The plaintiff was attempting to show that he would have succeeded in selling the bonds but for defendant's breach of its agreement. The most that he did show by the witness Trotter was that the witness and some other persons were disposed to look with favor upon the proposition, but that no decision to purchase had been arrived at, and that none would have been arrived at, in any event, without further examination and inquiry as to the organization of the shipbuilding company, its assets, and prospects of success. If Trotter had testified that any of these clients had agreed to take bonds, or had stated that they would take any particular amount, if the organization and assets of the company proved satisfactory, it would have been very material to ascertain who they were in order to test the accuracy of Trotter's evidence. But where there had been nothing but talk, resulting in no definite proposition, it was of slight importance with whom the talk was had, and the questions which sought to elicit their names were not sufficiently material to justify the suppression of the whole deposition because they were unanswered. If, under the same circumstances, the witness had been actually in court, and had refused to answer the questions, while he might have been punished for contumacy, it is doubtful whether the court would have felt justified in punishing the party who called him by striking out his

whole testimony. Nor does it appear that the defendant could not have compelled the witness to answer the questions by proper application to an English court. Our own Code provides for such a case, and we have no reason to suppose that the courts in England do not exercise the same authority.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion to suppress the deposition of the witness Trotter be denied, with $10 costs.

PATTERSON, P. J., concurs.

INGRAHAM, J. I concur with Mr. Justice SCOTT. While the cases cited in his opinion have recognized the rule that, where a witness who has been examined under a commission has refused to answer the cross-interrogatories or submit to a cross examination at all, the deposition may be suppressed, and that, in such a case, the party aggrieved by the refusal of the witness to submit to a cross-examination must make his motion before trial, so that the party relying upon the deposition may have proper notice of the fact that such an objection will be taken, that rule only applies where the witness has refused to submit to any cross-examination or to answer questions relating to all of the evidence that he has given in chief. And this court in Michaelis v. Compania, 51 App. Div. 470, 64 N. Y. Supp. 753, recognized and enforced this distinction. Where a motion is made to suppress a deposition on that ground, and it appears that the witness has been subjected to quite an extensive cross-examination, and it is only in relation to one of several subjects upon which he was examined in chief that he has failed or refused to submit to a cross-examination, certainly the court has power to deny the motion to suppress the deposition with a reservation to the aggrieved party to object at the trial to the reading of the direct examination upon the subjects about which the witness refused to be cross-examined. The proper rule to be applied seems to me quite plain. The party aggrieved has a right to move to suppress the deposition if it appears that the witness has refused to submit to any cross-examination or has refused to answer questions pertinent to his entire examination in chief, and the court is justified in suppressing the deposition. If, however, it appears that the matter as to which the witness has refused to submit to cross-examination only applies to one of several subjects about which the witness was examined in chief or are immaterial or unimportant questions, the court is justified in denying the motion to suppress the deposition, reserving the right to the party aggrieved to object upon the trial to such portion of the examination in chief to which the questions which the witness refused to answer related. I concur in this case with Mr. Justice SCOTT that the questions which the witness refused to answer were entirely immaterial, and that the counsel asking the questions could not acquiesce as he did in the witness' refusal to answer without making any request to the commissioner or to

the English courts to compel him to answer, and then have the deposition suppressed.

McLAUGHLIN, J. (dissenting). The rule is well settled that where a party is deprived of the benefit of the cross-examination of a witness, either by the party producing him or by the witness himself, the testimony given on direct examination cannot stand. People v. Cole, 43 N. Y. 508; Gallagher v. Gallagher, 92 App. Div. 138, 87 N. Y. Supp. 343; Morley v. Castor, 63 App. Div. 38, 71 N. Y. Supp. 363. The same rule applies to the examination of a witness on commission. Sturm v. Atlantic Mutual Ins. Co., 63 N. Y. 77; Goldmark v. Metropolitan Opera House Co., 67 Hun, 652, 22 N. Y. Supp. 136. Applying this rule to the deposition of the witness Trotter, I am of the opinion that the court properly suppressed it. It requires but a slight consideration of a portion of the testimony given by him on his direct examination to show that the questions which he refused to answer on cross-examination were pertinent, and may become very material at the trial.

The action is brought to recover damages for breach of contract. The plaintiff claims that the defendant entered into a contract with him, by which, for an agreed commission, he was authorized to sell abroad certain bonds of the par value of $3,000,000, out of a total issue of $16,000,000, for not less than 95, defendant agreeing that the balance would not be sold at a less price; that, in pursuance of the agreement, plaintiff went to London, England, and was there engaged in selling and would have sold the said $3,000,000 bonds had the defendant not violated its contract by offering the bonds at less than the plaintiff was authorized to sell them. The plaintiff, in order that he might establish his claim at the trial, took the testimony, by commission, of certain witnesses in London, England, including one named Trotter, who, on direct examination, gave in detail what he did, at the solicitation of the plaintiff, towards selling the bonds. He testified that he was connected with and was sole broker for some of the large banks, trust companies and financial institutions in London, some of which he saw concerning the matter, and that he met "with a very fair amount of encouragement. Two or three of these companies said they would like some of the bonds. The amount was not exactly fixed. I did not want to settle it first. I did not know how many I should have to spare, but I saw my way to take a considerable block of these. * * * I told him [referring to plaintiff] I saw my way to placing a considerable number. * * * I saw my way to take one and a half millions. * * * Then some of these companies, one or two, said what they would like, and some they did not know." He stated that he expected to take some of the bonds himself and place the others with companies with which he was connected, and in most of which he was a director; that he had presented the proposition to the boards of directors of the companies with which he was connected and official action had been taken; that one company, the name of which he had forgotten, had agreed to take $100,000; that another company "said

they would like to join"; that "the negotiations were in full swing, and I considered it was practically settled that certain companies would invest"; that he dropped the matter when he learned that the bonds were being offered at a less price than plaintiff had authorized him to sell them. He was then asked on cross-examination to give the names of the parties with whom he negotiated, which he refused to do, and then the following:

"Q. Do you decline to give the names of the companies you represented or to whom you presented this proposition? A. As it did not end in any business, I do not think I should be called upon to mention to whom I offered the thing about.

"Q. What is your objection to mentioning these names? A. I do not think it is a reasonable thing to ask me. The thing ended in nothing. * * * The thing had not gone far enough to put it before these people properly, and several said they would like some and gave me an idea of what they would take if I had some myself. The way I do my business it was sufficient for me up to that time.

"Q. We are seeking in this case to get at the real facts about the proposition being presented to these houses and by your refusal to give this information as to names you shut out any efforts on our part to get at the facts. A. You come to me on my oath.

"Q. We do not want to discredit your testimony. We do not want to be offensive in any way. You close the door as to our getting the facts as to what these companies did, and therefore I respectfully, and without any want of proper respect to you, I insist upon an answer to my former question as to the names of these institutions and clients. A. Well, I cannot give them to you."

The plaintiff was endeavoring to show by this witness that he would have succeeded in selling a large number of the bonds if the defendant had not violated its contract; and that much of the testimony given on direct would be admissible as bearing on that issue I do not believe can be seriously questioned. He stated that that he was going to take some of the bonds himself; that he had seen a large number of his clients; that one concern had agreed to take $100,000, others had agreed to take some, though the amount had not been agreed upon because he did not know how many he would have to spare; and that his efforts did not amount to an actual sale because the defendant offered the bonds at a lower price than he could sell them.

How can it be said, under such circumstances, that the questions which the witness refused to answer were not pertinent to the issue, or that the answers, had they been given, might not be very material? Such questions were pertinent because the matters to which they related had been referred to on the direct examination, which made the same matter a proper subject of cross-examination. They were pertinent because the defendant had a right in this way to test the credibility of the witness. They were also pertinent, inasmuch as the answers might have been very material as enabling the defendant to contradict the witness by showing that he had not negotiated with the firms, had he named them, or that they were not willing or did not have the ability to purchase such bonds. But it is suggested that the plaintiff did not object to the witness answering the questions, and for that reason he ought not to be deprived of the testimony which he did give.

This suggestion cannot be adopted. When a party calls a witness, he not only vouches for his credibility, but in a sense becomes responsible for his conduct, and, if such witness refuses to answer pertinent questions, then the party calling him must suffer the loss of his entire testimony. Gallagher v. Gallagher, supra.

It is also suggested that the defendant should have applied to the English Court of Chancery for an order directing the witness to answer. It doubtless could have done this, but was not obliged to. Plaintiff had selected this forum for the trial of the action, and defendant was not obliged to go into another jurisdiction for the purpose of enforcing its rights. The witness had refused to answer questions which, under certain aspects of the case, might become material and pertinent on the trial. This was sufficient ground for a motion to suppress the entire deposition (Palmer v. Great Western Ins. Co., 15 Jones & S. 455), and the proper practice was here adopted, which was to move in advance of the trial to suppress the deposition (Wright v. Cabot, 89 N. Y. 570; Vilmar v. Schall, 61 N. Y. 564; Eneback & Bryn v. Thurber, 45 Hun, 589; Hedges v. Williams, 33 Hun, 546).

I think the order appealed from is right, and should be affirmed.

CLARKE, J., concurs.