In the Matter of the Estate of BELLE MEZGER, Deceased.

Surrogate's Court, Monroe County, March 4, 1935.

*Harris, Beach, Folger, Bacon & Keating* [*L. B. Bacon* and *James G. Dale* of counsel], for the executor.

*Henry Kass, Jr.*, for the claimant.

FEELY, S. During the cross-examination of claimant's wife, as his main witness in support of his claim for the reasonable value of his services to testatrix, the witness suffered a stroke on the

witness stand, and has become so incapacitated thereby that claimant's counsel has stated to court and counsel he would not imperil her by ever producing her for further cross-examination. Thereupon the executor moved that all of the direct testimony of this witness be stricken from the record. Claimant's counsel questioned on the argument whether the general rule was applicable to the facts herein.

In a case where a woman became ill and unable to come back for cross-examination, it was said: " Undoubtedly there may be circumstances under which the failure or refusal of a party to a proceeding to appear and be examined by his adversary will justify either a stay of proceedings or even a dismissal of the proceeding, but the existence of such special circumstances must be clearly shown." (*Beardsworth* v. *Whitehead*, 137 App. Div. 306.) In *Clements* v. *Benjamin* ([1815] 12 Johns. 299) it was held that where the sickness of a witness, during examination, caused an adjournment to be taken, it was the duty of the party who called the witness to produce him again at the proper time, or show cause why he was absent, otherwise the testimony given before the interruption would have to be rejected. (See, also, *Matter of Crooks*, 23 Hun, 696.)

In the case at bar the incapacity seems permanent. The general rule is that " if the opposing party is deprived of the opportunity of a cross examination without fault upon his part, as in the case of the illness or death of a witness after direct examination, it is generally held that he is entitled to have the direct testimony stricken from the record. * * *

" This doctrine rests on the common law rule that no evidence should be admitted but what was or might be under the examination of both parties and that *ex parte* statements are too uncertain and unreliable to be considered in the investigation of controverted facts." (28 R. C. L. 600; 15 L. R. A. [N. S.] 493; *People* v. *Cole*, 43 N. Y. 508.)

There seems never to have been any doubt that the refusal of a witness to testify entailed rejection of his testimony in chief. (*Smith* v. *Griffith*, 3 Hill, 333; *Sturm* v. *Atlantic Mutual Ins. Co.*, 63 N. Y. 77; *Gallagher* v. *Gallagher*, 92 App. Div. 138; *Goldmark* v. *Metropolitan Opera House Co.*, 67 Hun, 652; *Calhoun* v. *Commonwealth Trust Co.*, 124 App. Div. 633.) The courts have considered as a distinct group the cases where further examination had become impossible by reason of unavoidable accident, or through no lack of reasonable foresight. In this group there is a further basis of distinction in that the fact the accident befell the witness during an adjournment has, in some circumstances, led to the argument

that by consenting to the adjournment the cross-examiner had waived his right to further examination (*Curtice* v. *West*, 50 Hun, 47, 49), sometimes without having attempted to make an express reservation of his right to further examine. (*Burden* v. *Pratt*, 1 T. & C. 554.) (See *People* v. *Severance*, 67 Hun, 182.)

The most recent case of impossibility is that of the destruction or loss of evidence in the form of exhibits. In *People* v. *Sugarman* (248 N. Y. 255) exhibits forming part of the original depositions had become lost; and the defendant was held entitled to have the depositions suppressed. There the court said: " To suffer to go to the jury any evidence given by a witness on direct examination by the People where, without the fault of the defendant, the whole evidence cannot be submitted to it is error. (*People* v. *Cole*, 43 N. Y. 508.) The question is one of supreme importance."

Where death of the witness left the cross-examination either unbegun or unfinished, the rule, for a time, appears to have been that direct testimony should not be stricken° out. In *Forrest* v. *Kissam* ([1844] 7 Hill, 463, revg. 25 Wend. 651) the trial court had adjourned, of its own motion, at the end of the direct testimony, and during the adjournment the witness died. The Court of Errors, by a vote of sixteen to six, on various grounds — necessity, " act of God," etc. — let the evidence stand. Later this case was criticized by the Court of Appeals in *People* v. *Cole* (43 N. Y. 548) on the ground that some members of the Court of Errors had held the direct testimony should be considered for what it was worth, and others had held that consent to the adjournment was a waiver of cross-examination; and so, " under these circumstances, it is impossible to determine upon what ground the reversal was placed by the majority of the court, and the case is consequently no authority." Later Judge BRADLEY said at General Term that though the case had been " criticized," it had not been " overruled." (*Curtice* v. *West*, 50 Hun, 47, 49.)

In *People* v. *Cole* (*supra*), as in the case at bar, the witness fainted at the close of the direct examination, and became so ill that cross-examination was impossible. The trial court refused to strike out the direct evidence, or to adjourn till the witness became able to go on again. This ruling was reversed, because it deprived the opponent of his right to cross-examine, that had been lost without fault on his part.

In *Morley* v. *Castor* (63 App. Div. 38), pending an adjournment of trial to allow defendant to go to Special Term for amendment of his answer, a witness whose cross-examination had been interrupted by the adjournment died. It was held that the testimony given by this witness for the defendant on the trial up to the point when

the adjournment left the cross-examination incomplete was not admissible under section 830 of the Code of Civil Procedure (now section 348 of the Civil Practice Act), which permits the reading on a later trial of testimony given on a former trial by a witness who had since become unavailable. (See, also, *Matter of Lynch*, 227 App. Div. 477.)

In *Beardsworth* v. *Whitehead* (137 App. Div. 306) the witness had become ill and was unable to come back for cross-examination. Instead of adopting what the court calls " the usual remedy " of a motion to strike out her testimony in chief, the procedure there followed was to procure an order directing the witness to appear for cross-examination, with the proviso that upon failure to appear all proceedings on her part should be stayed and dismissed without further order. Such an order was said to be unjustified.

There is an obiter expression in a general statement of the rule made by the Court of Appeals which should not be taken as definitive or intended to change the rule laid down in *People* v. *Cole* (*supra*). It was made in *Sturm* v. *Atlantic Mutual Insurance Co.* (63 N. Y. 77, 87) where the court was dealing only with the willful refusal of a witness to testify; but its opinion went beyond the needs of that issue, and attempted to state all the other cases in which the rule did, or did not, apply; and in the course of that generalization the opinion apparently resurrects the obsolete and unfair theory of the "act of God " that was advanced by some in *Kissam* v. *Forrest* (*supra*), and criticized in *People* v. *Cole* (*supra*). Otherwise this generalization is useful. It may be taken " as the rule, that where a party is deprived of the benefit of the cross-examination of a witness, by the act of the opposite party, or by the refusal to testify or other misconduct of the witness, or by any means, *other than the Act of God*, the act of the party himself, or some cause to which he assented, that the testimony given on the examination-in-chief may not be read."

Now, the application of this rule to the facts of this case is not complicated by any suggestion either of waiver by adjournment, or of absence, or refusal to testify. This stricken witness had been examined in chief as to items of service and occurrences in the years 1929 and 1930, of which the claim is composed. The cross-examination, while somewhat lengthy, was properly conducted, and had come to the point where only some of the items of 1929 had been covered, when the witness, without any fault whatever on the part of the cross-examiner, collapsed, and was taken to the hospital, with the untoward result aforesaid.

Here, while the cross-examiner had the opportunity to cross-question, and actually undertook to apply this " great and ordinary

test of truth " (*Bradley* v. *Mirick*, 25 Hun, 272), the opportunity was, apparently, not an adequate one. At least, if the rule be that it rests in the discretion of the trial court to say whether this direct, and incomplete cross-testimony should stand or not — which is Professor Wigmore's suggestion as to what he thinks the rule should be — even then it seems fair to say that the interruption happened before a considerable part of the items covered in the direct, those of 1930, had been subjected to cross-questioning; and that there would be as much reason to go over them as the existing cross-examination disclosed there was for it to have gone as far as it did. However, the several items in this spread of service over that period of two years were, apparently, not the cross-examiner's main objective. Without greatly questioning the sporadic services had each been actually performed, his point, rather, seems to have been the all-pervasive one of bringing out that the claimant's making a charge for any or all of them was only a post-testamentary afterthought; and his inquiries had made a measurable advance toward that end in the course of the existing cross-examination. He had there brought out that the relations of this nephew claimant to his aunt, the testatrix, were quite close and familiar in respect of the use of her summer cottage, in and about which the services were rendered, cleaning the premises, driving her back and forth, etc. At times their occupancy of this cottage was in common, with a sharing of the current expenses; and again this nephew was in it alone, on a rental basis. The testatrix was always well able to pay her debts; and although there were the aforesaid financial transactions between them during the period specified in the claim, ending with the year 1930, yet no bill was rendered, nor any demand made on her until three years after the end of the period of alleged service; and then the claim was, for the first time, made two weeks after the death of the testatrix, and at a time when presumably her testamentary plans had become known, and probably proved unsatisfactory to this nephew claimant.

How much further the unfinished part of the cross-examination would have succeeded in adding to this proof derived from the existing portion of it is not altogether clear, and is, perhaps, unnecessary to estimate. The benefit of any doubt should be given to the cross-examiner. His right to cross-examine is guaranteed by the provision for due process of law; and as a practical matter, it has been the experience of many familiar with trial work, that sometimes the truth is discovered only by the very last question; and even later, at times, by some statement volunteered by the witness as he is in the act of stepping down from the witness chair. There

are cases, however, where it may be possible to say that the cross-examination already had was adequate. For instance, in *Lew Choy* v. *Jim Sing* (125 Wash. 631; 216 P. 888) the witness had only translated a paper written in Chinese; and moreover, the correctness of his turning it over into English had been admitted, and was not in controversy. In *Curtice* v. *West* ([1888] 50 Hun, 47; 121 N. Y. 696) the action was begun in the Monroe County Court for labor and materials in building a hotel; and pending an adjournment, a witness, who was subcontractor to the plaintiff died, after he had been examined at considerable length; and cross-examination was interrupted by the adjournment. The referee struck out certain parts of the testimony given by this witness, " as to which he deemed no cross-examination had been had," which did not embrace all of that specified in the motion to strike out, and he allowed the residue to remain. Judge BRADLEY wrote: " The referee properly denied the motion to strike out all the evidence of the witness. The question arises upon the exception to the refusal to strike out the portions permitted to remain of those specified in the defendant's motion. The view of the referee evidently was that the cross-examination taken had relation to the subject of the portions allowed to remain of those embraced within such specifications of the evidence in chief of the witness. While this was correct as to some of it, there were other portions of it that do not seem to have been covered by the cross-examination." To this extent, the claimant's counsel is correct in saying the general rule is not absolute and unqualified. However, on the substantially different state of fact presented in the instant case, my conclusion is that the executor's counsel has not had an opportunity herein to cross-examine as fully and as adequately as he is presumably entitled to enjoy; and that his motion to strike all the testimony of the witness, Mrs. Mabel Mater, taken herein on February 4, 1935, both on direct and cross-examination, should be granted.

Enter an order in accord with this decision.