UNITED STATES of America

v.

Morris MALINSKY, Louis Rapkin, Irving Greene, Albert Pfeffer, Milton Tillinger, David Lustigman, Isidore Schwartz, Robert Barbieri, Robert Felt, Joseph Meglino, Sam Vogel, Sam Stolzenberg, also known as "Sam Stowe", Defendants.

United States District Court
S. D. New York.

April 2, 1957.

On Motion to Disqualify April 3, 1957.

See also, 20 F.R.D. 300.

Paul W. Williams, U. S. Atty., New York City, for the Government, by Myles J. Ambrose, and William S. Lynch, Asst. U. S. Attys., New York City.

Joseph A. Solovei, Brooklyn, N. Y., for Morris Malinsky.

Jacob P. Lefkowitz, New York City, for Louis Rapkin and Irving Greene.

Maurice Edelbaum, New York City, for defendants Albert Pfeffer and Isidore Schwartz.

Harold O. N. Frankel, New York City, for defendants Milton Tillinger and David Lustigman.

Harry Sokel, New York City, for defendant Joseph Meglino.

Meyer Licht, New York City, for Sam Vogel.

Joseph Panzer, New York City, for Sam Stolzenberg.

HERLANDS, District Judge.

The defendants have moved for a mistrial under the circumstances that will now be detailed.

This trial commenced on March 26, 1957, with the voir dire of the jury panel. Proceedings incidental to the selection of the jury continued on March 27, 28, 29, and April 1. On the morning of April 1st the jury, including four alternate jurors, was selected and impaneled. The prosecutor and defense attor-

neys then made their opening statements.

The Government's opening took place in the latter part of the morning, concluding at about 12:20 p. m. After the luncheon recess, and commencing at 2:00 p. m., defense counsel made their opening statements. Immediately upon the conclusion of such openings the Government called its first witness, one Joseph Levine.

He was being examined on direct examination and had given testimony that runs from pages 53 to 58 of the trial record when he suffered a heart attack. This occurred at about 2:46 p. m. His collapse took place in open court in full view of the jury while he was on the witness stand. Court was recessed. The jury was dismissed for the day. Levine was given emergency treatment and was carried out of the courtroom on a stretcher and brought by ambulance to a hospital. This morning the Assistant United States Attorney advised the Court and defense counsel that according to the information given to the Assistant United States Attorney by the hospital doctor, Levine had suffered a heart attack, that Levine had twice before suffered attacks of coronary thrombosis, that Levine has been or is being transferred to some private hospital, and that the preliminary prognosis, which was not detailed, would indicate that at least one week's hospitalization would be required. The probability is that he will require considerable more hospitalization in view of the fact that this is his third heart attack. The Government announced that it is ready to proceed with the trial with other witnesses.

The defense has moved for a mistrial, and this motion has been made in behalf of all of the defendants. It has been argued at length by all counsel. The legal principles which govern this situation are clear.

Wigmore, Third Edition, Volume 5, Section 1406, states that any physical incapacity preventing attendance in court, except at the risk of serious pain or danger to the witness, is equivalent to un-availability and that this has been almost universally recognized by the courts. Wigmore also states, Volume 5, Section 1390, that where the witness' illness intervenes to prevent or to curtail cross-examination, that precludes the defendant from his opportunity to cross-examine the witness and the direct examination should be stricken out. Wigmore states:

"Principle requires in strictness nothing else. But the true solution would be to avoid any inflexible rule, and to leave it to the trial judge to admit the direct examination so far as the loss of cross-examination can be shown to him to be not in that instance a material loss. Courts differ in their treatment of this difficult situation    *    *    *"

Among the cases cited by Wigmore, Section 1390, Note 4, at page 111, is Matter of Mezger's Estate, 1935, 154 Misc. 633, 278 N.Y.S. 669. In the Mezger case the main witness in an accounting proceeding became so incapacitated as to prevent her subsequent appearance for further cross-examination. It appeared that the witness suffered this stroke on the witness stand and became so incapacitated thereby that the attorney who had produced her stated to the Court and opposing counsel that he would not imperil her by ever producing her for further cross-examination. A motion was made to strike all of the direct testimony of this witness from the record. This motion was granted with respect to the witness' entire testimony.

Surrogate Feely in his opinion collected all of the authorities dealing with this question. Such authorities include People v. Sugarman, 248 N.Y. 255, 162 N.E. 24; and People v. Cole, 43 N.Y. 508. After reviewing the decisions Surrogate Feely said in 154 Misc. at page 637, 278 N.Y.S. at page 674:

"The benefit of any doubt should be given to the cross-examiner. His right to cross-examine is guaranteed by the provision for due process of law; and as a practical matter it has been the experience of many

familiar with trial work that sometimes the truth is discovered only by the very last question &ast; &ast; &ast;."

In the federal courts substantially the same rule would apply. In the present case we do not have a situation where a cross-examination had begun, but was unfinished at the time of the witness' illness and where the purposes of cross-examination "have been substantially accomplished," as was the case of Jaiser v. Milligan, D.C.Neb.1954, 120 F.Supp. 599, 604. A motion to strike out the direct examination would, of course, be plainly justified and would present no problem. The more serious question concerns the defense motion for a mistrial.

The cumulative effect of the following factual features in the present case is decisive:

1. The prosecutor's opening mentioned Joseph Levine ten times by name and stressed the significance of his prospective testimony. No other witness was mentioned by name in the opening.

2. Joseph Levine was the very first witness called by the prosecution. He began to testify shortly after the opening statements had been concluded. Thus there was no interval of intervening testimony between the conclusion of the opening statements and the giving of the testimony by Levine.

3. Levine suffered a stroke in full view of the jury while on the witness stand and these circumstances dramatized and underscored his appearance on the stand and would continue to dramatize and underscore his absence as a prosecution witness in the future in this particular trial or with this particular jury.

4. His direct examination was in its initial stage. There was no cross-examination or opportunity for cross-examination by the defendants.

5. It could not be safely predicted that an instruction given by the Court to the jury to disregard the references to Levine in the prosecutor's opening would achieve the desired result of eradicating the prosecutor's remarks. This Court is cognizant of the doctrine prevailing in this circuit and recently reiterated in the Paoli case (United States v. Delli Paoli), 2 Cir., 1956, 229 F.2d 319, affirmed 352 U.S. 232, 77 S.Ct. 294, 1 L. Ed.2d 278, that it is to be presumed and assumed that trial juries will follow the instructions of the trial judge.

In the present case it is extremely likely that some of the jurors would entertain the thought that the Government might have been able to prove certain facts but for the illness of the witness Joseph Levine, and the jury might well remember the substance of the prosecutor's remarks concerning Levine as made in the prosecutor's opening statement. The remarks of the prosecutor with specific reference to Levine are contained at pages 17 to 20 of the trial record. An examination of the trial record, pages 17 to 20 shows that frequent and important references were made to Levine. He is mentioned in the indictment as a co-conspirator. The opening statement by the prosecutor linked Levine with the defendants, and as already pointed out, no other witness was mentioned by name. Levine's acts of participation in the conspiracy were described in the opening, and the prosecutor stated, "Levine, the former business manager of the Association and president of this union, will testify for the Government in this case."

It has been estimated by counsel that this trial will take approximately six weeks. Levine was the very first witness. It is true that the selection of the jury required several days of court sessions, but there has been no other investment of time and expense in the trial itself on the part of the Court or prosecution and the defense. Rather than devote six weeks to a trial which might eventually be frustrated by virtue of the possible prejudicial error of continuing with the same jury which witnessed all of the foregoing events, it would be sound judicial administration to grant the defendants' motion for a mistrial and to proceed immediately with the selection of a new jury.

Accordingly, the defendants' motion for a mistrial and for the withdrawal of a juror is granted and the case will be ordered to proceed to trial immediately with the selection of a new jury.

### On Motion to Disqualify

■ The defendants have moved under Title 28 U.S.C.A. § 144, to disqualify me from sitting as a judge in this case on the ground of personal bias and prejudice. The motion is denied for the reasons hereinafter set forth.

Section 144 provides as follows:

"Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

"The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith."

The nine defendants have submitted a joint affidavit in support of their application. Their attorneys certify "That the application made by the defendants herein is made in good faith."

The sole question presented by this motion is whether the moving affidavit is "sufficient" within the meaning of Section 144.

The second paragraph of Section 144, as noted, requires the moving affidavit to state "the facts and the reasons for the belief that bias or prejudice exists." The moving affidavit recites that the indictment herein has been tried from December 3, 1956, until December 14, 1956, before District Judge Thomas Murphy, and that at such trial "considerable testimony had been taken and the major portion of the Government's case has been presented, including the testimony of one Joseph Levine."

As a matter of record, the trial before Judge Murphy resulted in a mistrial on December 7, 1956. Thereafter, in due course the case came on for trial before me. The defendants' moving affidavit recites "That without the consent of the defense the Honorable William B. Herlands read the testimony of the prior trial, including the testimony of said Joseph Levine, which witness had not as yet been cross-examined by any of the defense counsel."

The moving affidavit further states, "That in view of the fact that a judge of the United States Court has the right and the power to make comment to a jury on the evidence in this case, the defendants feel that his judgment would be impaired by reason of the fact that he had read the prior testimony of the first trial before the Honorable Thomas Murphy, United States District Judge."

The second reason submitted by the defendants in support of their application is set forth in the moving affidavit as follows:

"That also during the selection of the jury and the conducting of the voir dire the Judge made an opening statement to the jury which in the opinion of the defendants and the affiants herein constituted in fact an opening by the Government."

It will be noted that the short and summary statement by the defendants is almost entirely conclusory in character. Assuming, however, that the recitals in the affidavit constitute a statement of "the facts and the reasons," it clearly appears that they are frivolous and, therefore, not sufficient.

■ The minutes of the trial before Judge Murphy until the time of the mistrial were and are a public record and part of the Clerk's file in this case.

This Court was required to read various parts of that record because the defendants herein renewed before me various motions which had originally been made before Judge Murphy and decided by Judge Murphy. Judge Murphy's rulings on those motions were set forth in the first trial record. The fact that this Court read the minutes of the first trial does not constitute any impairment of judgment and does not create "personal bias or prejudice." If the rule were otherwise, a judge who presided at a trial which resulted in a mistrial would be barred from presiding at the re-trial. This, of course, is not the law, United States v. Lowrey, D.C.Pa., 1948, 77 F. Supp. 301, affirmed 3 Cir., 172 F.2d 226; Craven v. United States, 1 Cir., 1927, 22 F.2d 605.

In this case, as indicated, the defendants made numerous motions at the outset of the trial. In effect these were renewal of the same motions made before Judge Murphy. Thus, on December 3, 1956, the first day of the trial before Judge Murphy a motion to dismiss the indictment was made. (Trial record before Judge Murphy, pages 5 to 9.) Judge Murphy reserved decision, page 9. A motion for a bill of particulars was made before Judge Murphy, pages 9 to 11; a motion for dismissal of the indictment was made, pages 11 to 13; decision was reserved, page 13.

Another motion was made at page 14. At pages 15 to 24 reference was made to a motion involving a perjury indictment. As to that motion decision was reserved.

Motions were further discussed and argued at pages 24 to 28. A motion for a severance was made, pages 29 to 30.

On the second day of the trial, on December 4, 1956, the defense again made and argued motions to dismiss. (pages 44 and following.) This was denied. A motion for a bill of particulars was made again at page 53. A severance motion was made at page 55. Decision was reserved.

In the course of the trial before Judge Murphy the motion involving the bill of particulars and supplemental bill of particulars was discussed and commented upon in various points of the record. Motions for severances were made and referred to in the course of the record. Moreover, by virtue of the mistrial that took place before Judge Murphy this Court was put on notice that the first trial had aborted, and it became part of the judicial judgment to ascertain what circumstances led to the mistrial, so that to the extent that it was within the power of the present trial judge to prevent such pitfalls the necessary precautionary steps might be taken by this Court. It thus became obvious, as the judge assigned to try the case upon the retrial, that it might be desirable for the Court to look through the record of the first trial in order to ascertain what motions were made, what arguments were adduced, what disposition was made, and what problems were presented to the extent that they could be obviated or avoided upon the second trial.

As stated by me several times in the course of the proceedings, the Court skimmed through and rapidly read the voluminous record for the purposes indicated. The subject of the mistrial was discussed at pages 1,460 and following. This took place on December 14, 1956. On December 17, 1956, there was a discussion by the Court. None of the attorneys who made the motions excerpted for the benefit of the Court those precise parts of the prior record which would be available to this Court instead of resorting to the record itself, and, therefore, the Court was compelled to familiarize itself with the motions, the arguments and dispositions made before Judge Murphy. Therefore, the first reason adduced by the defense is frivolous and transparently flimsy.

The second reason advanced by the defense is that I "made an opening statement to the jury" in conducting the voir dire "which in the opinion of the defendants" constituted an opening statement by the Government. It is important to note that the defendants and their attorneys have not set forth either

generally or specifically the parts or portions of the voir dire statement or statements or questions which the defendants find objectionable. The defendants make the blanket and unqualified assertion without supporting references that they have the "opinion" that the voir dire statement "constituted, in fact, an opening by the Government." The voir dire proceedings were stenographically recorded as part of the official minutes of the trial. The voir dire, in fact, took place over a number of days, from March 26 to April 1st. Three groups or panels of talesmen were questioned, and the Court was required to make three different voir dire statements and to conduct three different sessions of questioning of the panel. The objected to voir dire statement or statements is not identified by date or text. Defendants' assertion is vague, general and conclusory. The official transcript of the proceedings, of course, speaks for itself. A reading of that transcript will show that the voir dire conducted by the Court was scrupulously and meticulously in line with the requirements of the Federal Rules of Criminal Procedure, Rule 24, 18 U.S.C.A. and other controlling provisions. Not only did the Court itself conduct the examination of prospective jurors, but the Court permitted defense counsel and the attorney for the Government to supplement the Court's examination, as provided for by Rule 24(a) of the Federal Rules of Criminal Procedure. In addition, the defendants were requested to and did submit in writing proposed questions for the voir dire, which questions were submitted before the voir dire commenced, and these questions were utilized by the Court either in haec verba or in substance. Thus it appears clearly that the alleged facts and reasons for the defendants' belief that bias or prejudice exists are completely lacking in merit or substance. The moving affidavit is, therefore, insufficient under Section 144 of Title 28.

The leading case on the subject is Berger v. United States, 1921, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481, three justices dissenting. In Mr. Justice McKenna's opinion for the majority, the Court pointed out in 255 U.S. at page 33, 41 S.Ct. at page 233, that the statute does not sanction "frivolous affidavits". At pages 33–34 of 255 U.S., at page 233 of 41 S.Ct. Mr. Justice McKenna said:

"Of course the reasons and facts for the belief the litigant entertains are an essential part of the affidavit, and must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment."

In the Berger case, the Court found that the defendants' affidavit contained facts and reasons which were "substantial and formidable". 255 U.S. at page 34, 41 S.Ct. at page 233.

In this Circuit, the Court of Appeals has stated that in order to establish "disqualifying bias or prejudice," the moving affidavit must be "sufficient," and that a sufficient affidavit must show "that such a prejudice exists against the party making the affidavit or in favor of his opponent as to preclude impartial judgment by the recused judge." In re Lisman, 2 Cir., 1937, 89 F.2d 898, 899.

In Foster v. Medina, 2 Cir., 1948, 170 F.2d 632, at page 633, certiorari denied 335 U.S. 909, 69 S.Ct. 412, 93 L.Ed. 442, Circuit Judge Swan, for a unanimous court, said:

"The test for determining the sufficiency of an affidavit of personal bias and prejudice was laid down by the Supreme Court in Berger v. United States, 255 U.S. 22, at page 33, 41 S.Ct. 230, at page 233, 65 L. Ed. 481 as follows: 'Of course the reasons and facts for the belief the litigant entertains are an essential part of the affidavit, and must give fair support to the charge of a bent mind that may prevent or impede impartiality of judgment.' See also In re Lisman, 2 Cir., 89 F.2d 898, 899."

The entire subject is discussed in an article by John P. Frank, "Disqualification of Judges" (1947) 56 Yale Law

Journal 605, 626–630. Professor Frank cites and discusses the Berger and Lisman cases.

At page 630, Professor Frank states:

"An analysis of the cases leads to the conclusion that unless and until the Supreme Court gives new force and effect to the Berger decision the disqualification practice of federal district courts will remain sharply limited. While Section 21 of the Judicial Code [Title 28 U.S.C.A. section 144] may appear to provide a federal change of venue statute, it has not in operation attained this result."

The motion is accordingly denied in all respects.