## BOWEN v. HAVANA ELECTRIC RY. CO.

(Supreme Court, Appellate Division, First Department. November 3, 1911.)

1. DEPOSITIONS (§ 38\*)—ORDER—COMMISSIONER—UNITED STATES CONSUL.

   Where an original order for the taking of depositions abroad provided that they might be taken before the consul general, etc., failure of the order to give the consul's name did not render the order or the commission void, but was a mere irregularity, which could be corrected on a motion to resettle the order, after return of the commission.

   [Ed. Note.—For other cases, see Depositions, Cent. Dig. § 53; Dec. Dig. § 38.\*]

2. DEPOSITIONS (§ 83\*)—ORDER—COMMISSION—CORRECTION NUNC PRO TUNC. ·

   Where an order for the taking of depositions abroad under a commission directed that they might be taken before the consul general, but failed to state his name, and after the execution and return of the commission a motion for the resettlement of the order was made and granted · to correct the defect, the fact that the commission was not corrected nunc pro tunc in the same manner afforded no ground for the suppression of the depositions.

   [Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 219–226; Dec. Dig. § 83.\*]

3. DEPOSITIONS (§ 83\*)—EXECUTION OF COMMISSION—COUNSEL.

   Evidence *held* insufficient to show that plaintiff was represented by counsel at the taking of depositions in a foreign country, or that defendant had been unable to ascertain before whom the commission would be executed, so that it could. also be represented.

   [Ed. Note.—For other cases, see Depositions, Dec. Dig. § 83.\*]

4. DEPOSITIONS (§ 83\*)—SUPPRESSION—GROUNDS—IMPROPER QUESTION.

   The fact that one of the written questions, on which the evidence of a witness was taken by commission in a foreign country, contained an improper recital, is no ground for objecting to the execution of the commission, the matter being one for attention on the settlement of the interrogatories, and, having been permitted to stand, must have been acquiesced in, or, if objected to, presumably allowed by the court.

   [Ed. Note.—For other cases, see Depositions, Dec. Dig. § 83.\*]

5. DEPOSITIONS (§ 83\*)—SUPPRESSION—GROUNDS—BIAS OF WITNESS.

   The interest or bias of a witness, whose testimony is taken by commission in a foreign country, goes only to his credibility, which is for consideration at the trial, and affords no ground for suppressing his testimony.

   [Ed. Note.—For other cases, see Depositions, Dec. Dig. § 83.\*]

6. DEPOSITIONS (§ 83\*)—MOTION TO SUPPRESS—GROUNDS.

   The fact that certain witnesses deliberately refused to produce certain documents called for by certain interrogatories, and that they refused to answer certain of such interrogatories fully, was not ground for suppression, under Code Civ. Proc. § 910, prescribing the defects for which depositions may be suppressed; but the court possesses inherent power to suppress a deposition, where a witness refuses to give material testimony, called for by proper cross-interrogatories, the proper practice being to move to quash at Special Term in advance of the trial.

   [Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 219–226; Dec. Dig. § 83.\*]

7. DEPOSITIONS (§ 83\*)—SUPPRESSION—CROSS-INTERROGATORIES—REFUSAL TO ANSWER—MATERIALITY.

   Defendant was not entitled to the suppression of certain depositions \ of witnesses taken abroad, for their refusal to fully answer certain cross-

interrogatories, which, so far as material, related to a defense of fraud, waiver, or estoppel.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 219–226; Dec. Dig. § 83.*]

8. DEPOSITIONS (§ 40*)—LETTERS ROGATORY—RIGHT TO ISSUANCE.

Where defendant, both at Special Term and on appeal, opposed the issuance of a commission to take depositions in France, on the ground that not being recognized by the courts of that country, it would be ineffective, and insisted that letters rogatory should issue, and on the return of the depositions moved to suppress because of the refusal of the witnesses to answer certain cross-interrogatories intended to support the defense, such motion being denied, defendant would be granted leave to apply for letters rogatory, under which the witnesses could be compelled to answer the questions and produce the documents required.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. § 61; Dec. Dig. § 40.*]

Appeal from Special Term, New York County.

Action by Herbert E. Bowen against the Havana Electric Railway Company. From an order suppressing five depositions, plaintiff appeals. Reversed, and motion denied, with leave.

See, also, 142 App. Div. 938, 127 N. Y. Supp. 1113.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

John Larkin (Alexander S. Andrews, on the brief), for appellant.
Edmund L. Mooney (David T. Davis, on the brief), for respondent.

LAUGHLIN, J. The depositions, which have been suppressed, were taken in the months of September and October, 1910, before Frank H. Mason, consul general of the United States at Paris, France, as commissioner, in that city, under a commission issued in behalf of the plaintiff, pursuant to an order of the Special Term of this court, made on the 24th day of June, 1910, and, together with the commission, were returned by him to the county clerk of New York county on the 16th day of December thereafter. The depositions were given on direct and cross interrogatories, annexed to the commission. The record does not show whether the direct and cross interrogatories were settled by the court or by consent.

The motion for the suppression of the depositions was made by the defendant on five grounds: (1) That three of the witnesses namely, Samuel Einhorn, Jacques Kulp, and Ernest May, severally, deliberately refused to produce certain documents, called for by the cross-interrogatories and necessary to render their depositions complete and competent; (2) that said three witnesses deliberately refused to answer fully certain cross-interrogatories; (3) that "the plaintiff and the witnesses were allowed to have counsel while under examination, whereas the defendant was unable to ascertain before whom the commission would be executed or to be present thereat and the commission was unfairly executed"; (4) that the commission was not addressed to or returned by a person named in the order, and was not executed and returned by the person to whom it was addressed; and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(5) that it was executed before and returned by a commissioner not named in the commission.

[1] There is no merit in the fourth and fifth grounds of the motion. In the original order, in force at the time the commission was issued and the depositions were taken, the designation of the commissioners to take the same was as follows:

"The consul general, or vice consul general, or deputy consul, or deputy vice consul of the United States at Paris, France, or to either of the following commissioners of deeds for the state of New York at Paris, France, viz.: Henry Peartree, Henry Cachard, Henry C. Charpiot, Benjamin H. Conner, Mandeville C. Jacobus, William A. Preston, and John B. Robinson."

At the times in question said Mason was the consul general of the United States at Paris, France, and the commission was executed before him, as already stated. The contention on behalf of the respondent is that, in so far as the order attempted to designate the consul general as a commissioner, it was invalid, for the reason that he was not named; and section 887 of the Code of Civil Procedure and the case of Hemenway v. Knudson, 73 Hun, 227, 25 N. Y. Supp. 1018, are cited as authority for this contention. The failure to give the consul's name did not render the order or the commission void. That was merely an irregularity, which was corrected on a motion to resettle the order, made on an appeal to this court from the original order, which modified the original order by striking out "so much thereof as provides for the execution of the commission before the consul general, vice consul general, deputy consul, or deputy vice consul of the United States at Paris, France." Bowen v. Havana Electric Railway Co., 142 App. Div. 938, 127 N. Y. Supp. 1113. On the motion for resettlement the name of the consul general, together with his office of "American consul general at Paris, France," was inserted, and the other names were stricken from the order.

[2] This was after the execution and return of the commission, and that appeared on the motion for resettlement. It is manifest that the purpose of granting the motion to resettle the order was to correct the irregularity with respect to the commission already issued, executed, and returned, and not to afford the basis for the issuance of a new commission. The mere fact that the commission was not amended nunc pro tunc in the same manner afforded no ground for suppressing the depositions.

[3] The only basis for the claim that the plaintiff and the witnesses were allowed to have counsel at the hearings, and that defendant was unable to ascertain before whom the commission would be executed, or to be present at the examination of the witnesses, is that, after the commission was issued, one of the attorneys for the defendant asked one Andrews, an attorney in the office of the plaintiff's attorney, to whom the commission had been sent, to which inquiry Andrews replied that it would be sent immediately to Paris, where the plaintiff's attorney, who had gone there, would receive it, but that he did not know before which commissioner it would be executed, and that the plaintiff's attorney would decide that upon receipt of the commission. It does not appear that defendant's attorneys asked for the

foreign address of the attorney for the plaintiff, or that any communication be sent to him, or even informed Andrews that he desired to be notified or to be present. The commission was mailed to the plaintiff's attorney at Paris, France, from his office in New York, and he delivered it to Coudert Bros. at their office in Paris, France, for the purpose of attending to its execution.

The record does not show what Coudert Bros. did in the premises, other than that it appears that the commission was executed before Consul General Mason, and he certifies that on its execution "Mr. Le Fevre appeared in behalf of the plaintiff, and that no one appeared in behalf of the defendant"; but there is no evidence that Le Fevre took any part in the examination of the witnesses, or did anything other than to be present. It is claimed, however, on the part of the respondent, that some of the answers made by the different witnesses are so similar as to indicate that they must have been prepared for the witnesses by some one in behalf of the plaintiff. It appears by the affidavit of the attorney for the plaintiff that on the receipt of the commission by him in Paris, and on ascertaining that some of the commissioners, named in the original order and in the commission, were absent on vacations, or just about to go, he delivered the commission to Coudert Bros., as stated, with instructions to see that it was properly executed "by one of the American consular officers therein designated, and thereafter returned," and that neither he, nor any one connected with him, attended any of the hearings, or saw or communicated with any of the witnesses examined.

[4] Part of the criticism on this point is directed to what are claimed to be erroneous recitals of fact in one of the direct interrogatories, and to the answer of Einhorn thereto, and to cross-interrogatory 248, which it is claimed indicate that he was assisted by counsel. In so far as the objection is that the direct interrogatory contains an improper recital, that is a matter which should have been remedied on the settlement of the interrogatories, and, since it was acquiesced in, or, if objected to, it must be presumed that it was allowed by the court, it affords no ground for criticism with respect to the execution of the commission. The answers of Einhorn, to which attention is drawn, tend to show interest or bias; but it cannot be inferred therefrom that he was assisted by counsel, and in the absence of such evidence it only goes to his credibility, which is a matter for consideration on the trial of the issues only.

[5] It is also urged in support of this objection that the Banque Internationale de Paris, one of the plaintiff's assignors, was interested in the plaintiff's claim, and that the witnesses were interested in, or connected with, it. That, however, was no objection to their being examined as witnesses, and does not tend to show that the commission was not fairly executed. Manifestly there was no basis for suppressing the depositions on the third ground.

[6, 7] There is no statutory authority for suppressing depositions on the other grounds upon which the motion was made (Code of Civil Procedure, § 910); but, doubtless upon the same principle that the testimony of a witness upon a trial, who refuses to be fully cross-ex-

amined, may be stricken out on the ground that the party who calls him cannot have the benefit of testimony with respect to which the witness refuses to be fully examined, the court possesses inherent power to suppress a deposition, where the witness refuses to give material testimony, called for by *proper cross-interrogatories,* and the proper practice is to move at Special Term in advance of the trial as was done here. Calhoun v. Commonwealth Trust Co., 124 App. Div. 633, 109 N. Y. Supp. 77.

[8] A proper understanding of the materiality of the evidence, which it is claimed the witness failed to give, requires that the nature of the issues be stated. The action is brought on six assigned causes of action against the defendant, based on a contract in writing made on the 11th day of September, 1899, between Hanson Bros., party of the first part, Percival Farquhar, F. S. Pearson, G. B. M. Harvey, and B. F. Pearson, parties of the second part, Ernest Ruffer, party of the third part, the Banque Internationale de Paris, party of the fourth part, the defendant, party of the fifth part, and the United States Mortgage & Trust Company, party of the sixth part. This agreement was supplementary to, and in part a modification of, an agreement in writing, and according to the answer under seal, between the same parties, except the United States Mortgage & Trust Company, made on the 18th day of April of the same year. The original agreement recited that the parties of the first, second, third, and fourth parts were the owners in different proportions of the concessions, rights, shares, properties, and belongings of La Compania Ferro Carril Urbano y Omnibus de la Habana, meaning the City Railroad and Omnibus Company of Havana, a corporation organized and formerly existing in Havana, Cuba; and it provided for a sale thereof to the defendant, in consideration of the transfer to them of stock and bonds of the defendant, in the amounts and proportions therein provided. The vendors of the concessions, rights, shares, properties, and belongings of said formerly existing railroad and omnibus company agreed in the third clause of the contract that, on the delivery of the stock and bonds to them, they would pay to the trustee of a mortgage—evidently executed to secure the payment of the bonds, although this fact is not recited—"an amount equal to 5 per cent. on the face value of the bonds delivered to them," which amount it was provided should be applied to the payment of the first interest that shall accrue for the first year on the bonds; and they further agreed, in the fourth clause of the contract, to purchase from the defendant additional bonds in the amount therein specified, at 95 per cent. of the face value thereof, and to pay the trustees therefor, and it was provided that the trustee should retain 5 per cent. thereof for the payment of the first year's interest on the bonds. The second agreement recites that the concessions, rights, shares, properties, and belongings covered by the first agreement had been conveyed to the defendant by the parties of the first, second, third, and fourth parts, and that the defendant had issued its stock and was about to deliver the same in accordance with the agreement; that it had executed a mortgage to the United States Mortgage & Trust Company, and was about to issue its bonds and to deliver the same to the parties

of the first, second, third, and fourth parts; that the making of the mortgage securing the bonds, and the issuance of the bonds, had been for various unavoidable reasons unexpectedly delayed, and that the bonds were dated February 1, 1899, and bore interest from that date, and the first coupons became due on August 1st prior to the execution of the second agreement, and that for these and other reasons recited, which it is not necessary to set forth here, it was mutually agreed, among other things, that before the delivery of the bonds the coupons which had become due should be cut off and canceled; and that the moneys which the vendors were to pay to the trustee to be applied to the payment of interest on the bonds should be applied to the payment of such interest falling due on the 1st of February and August, 1900. The third clause of the second agreement is the one upon which the assigned causes of action are based. It provides that the net earnings of the defendant, after providing for fixed charges—

"as determined by the board of directors of the said company, shall, to the extent that they are earned, but not exceeding a total amount of one hundred thousand ($100,000) dollars, be paid by it to the parties of the first, second, third, and fourth parts, respectively, in the proportion that, under the third and fourth articles of said agreement, said parties make payment, respectively, to the trustee of the said mortgage of amounts which are applied to the payment of the interest falling due on August 1, 1900, on the bonds duly issued under said mortgage."

It is alleged that the sale of the said concessions, rights, shares, properties, and belongings was consummated pursuant to the original agreement, as modified by the second agreement; that the vendors paid the amounts to the trustee in the proportions, and as by the agreement they were required; that the net earnings of the defendant over and above the fixed charges as determined by the board of directors, not only were sufficient to reimburse them, as contemplated by the agreement, but that the board of directors "duly determined and resolved that the said net earnings of the defendant, in excess of its said fixed charges, should be applied to the repayment of the aforesaid amounts," and credited their respective accounts with the amount thereof. The plaintiff, by virtue of these assignments, succeeded to the rights of the parties of the first, second, third, and fourth parts, with respect to this reimbursement, excepting F. S. Pearson, whose share of the $100,-000 amounts to the sum of $6,250. The Banque Internationale de Paris was in liquidation at the time of the assignment of its claim to the plaintiff and the formal assignment of the claim was made by two of its liquidators. This assignment was put in issue by the answer.

With a view to showing the authority of these liquidators to assign the claim, the plaintiff applied for a commission to examine the five witnesses, three of whom were liquidators; there being eleven liquidators of the Banque, and also former directors of the Banque. One of these three was president of the former board of directors of the Banque, and president of the board of liquidation. The other two witnesses were stockholders of the Banque. All of the direct interrogatories were framed with a view to obtaining evidence to sustain the allegation of the complaint with respect to the assignment of the claim of the Banque to the plaintiff. The last direct interrogatory was

clothed in the usual phraseology, calling for anything further that the witness might know to the benefit and advantage of the plaintiff "concerning the matters in controversy in this suit, especially in regard to the said assignment from said Banque" to the plaintiff, and, if so, requesting him to state the same fully and at large as if he had been particularly interrogated concerning it. In answer to this interrogatory, Einhorn, who was one of the directors of the Banque and one of the liquidators who signed the assignment of the Banque's claim to the plaintiff, went beyond the question with respect to the assignment of the claim, and stated that the defendant was created by the Banque and others; that the defendant being unable to pay the coupons on the bonds, which its promoters had agreed to take, the promoters consented, in exchange for those coupons without being paid, to accept the agreement by the defendant to repay them the $100,000. This was covered by the agreement in writing and the parol testimony will be inadmissible. He also gave the history of the incorporation and existence of the Banque, and the reason for its liquidation, and the proceedings on the liquidation. The cross-interrogatories, which it is claimed on the part of the defendant were not fully and fairly answered, and which called for the production of letters, books, papers, and documents, which it is claimed were not produced, were not, strictly speaking, cross-interrogatories, and do not relate to the issue with respect to the assignment of the cause of action by the Banque to the plaintiff; but those which are material to the issues bear upon defenses pleaded.

It is claimed on the part of the defendant that it was justified in propounding these cross-interrogatories with respect to its defense, and to have them fairly and fully answered, and the evidence called for by them produced, on account of the plaintiff having asked this general interrogatory, and on account of the answer of the witness, the substance of which has been stated. The answer admits the execution of the first agreement, made on the 18th day of April, 1899; but it puts in issue the allegations with respect to the second agreement, and this is apparently upon the theory that its execution was not duly authorized by the defendant, for it is stated that the board of directors of the defendant authorized the execution of a different agreement at that time. The answer, so far as material to the decision of the questions presented by the appeal, pleads as separate defenses, in effect, first, that the second agreement was without consideration, in that the agreement for the repayment of the $100,000 was made solely for the benefit of the parties of the first, second, third, and fourth parts to the agreement, and against the interests of the defendant; second, estoppel, in that the parties of the first, second, third, and fourth parts dominated and controlled the board of directors, and concealed and withheld from the records and from the stockholders the making of the alleged agreement with respect to said reimbursements, and obtained the consent of the stockholders to the execution of a mortgage, and to the issue of bonds, and to the increase of the capital stock, and suppressed from creditors, who took bonds in payment of their claims, and third parties who purchased bonds, the existence of said indebted-

ness; third, waiver by abandonment of the claim and the acceptance of bonds and treasury stock issued on the theory that such claim was not outstanding; fourth, accord and satisfaction and estoppel, by the execution of a new agreement under an arrangement by which it was understood that this alleged indebtedness was to be considered discharged; and, fifth, fraud, in changing the annual balance sheet for the year ending December 31, 1906, by adding this claim as a liability and entering the same in the books of the defendant, and in adopting the resolution for the repayment of the money in anticipation of a change in the control of the board of directors of the defendant, and that on April 26, 1907, a new board of directors having come into power, it rescinded the resolution and corrected the entries by expunging the admission of liability.

Some of the interrogatories, which it is claimed were not fully and fairly answered, and which called for the production of correspondence, agreements, books of account, statements of account, and settlements of accounts, which were not produced, have no bearing on the issues. They were designed to show that third parties had underwritten the liability of the Banque, with respect to these concessions, etc., to the extent of 50 per cent. of its interests, and were entitled to that proportion of the stock and bonds and of the claim which was assigned to the plaintiff.

Others of the interrogatories, which it is claimed were not fully and fairly answered, and which called for correspondence which was not produced, relate to correspondence between the Banque and one Marcus, who was its agent in New York, and was also the treasurer of the defendant, and who has since died. The apparent object of those questions, and of having the correspondence to which they relate produced, is to show that during the period intervening between the time the first agreement was made between the defendant and the Banque and others and the time the balance sheet was changed and entries of this claim made in the records, as set forth in the answer, this claim was not asserted against the defendant. This might bear on the question of fraud, or waiver or estoppel, and in view of the fact that Marcus is dead, it would seem that the defendant should be permitted to have this evidence, especially inasmuch as it was called for by interrogatories annexed to the commission and presumably settled by consent or by the court, although they are not cross-interrogatories.

Other interrogatories, concerning which complaint is made of the answers and of the failure of the witnesses to produce evidence, relate to statements of account between the Banque and the defendant. This evidence might have a bearing on the same issues. Inasmuch, however, as these matters relate only to the defense, and it does not satisfactorily appear that the witnesses had the custody and control of the letters, papers, and documents to which the inquiries relate, the depositions should not have been suppressed; but since the defendant, both at Special Term and on the appeal, opposed the issuance of a commission in the first instance on the ground that, not being recognized by the courts of France, it would be ineffective, and insisted that letters rogatory should issue, it should now be given leave, if it so elects,

to apply for letters rogatory, under which the courts of France would doubtless compel the attendance of witnesses and the production of letters, books, and papers, and other documents that may be required by the interrogatories, which would be settled pursuant to the provisions of section 913 of the Code of Civil Procedure. See Decauville Automobile Co. v. Metropolitan Bank, 124 App. Div. 478, at pages 484, 485, 108 N. Y. Supp. 1027.

It follows, therefore, that the order should be reversed, with $10 costs and disbursements, and motion denied, with $10 costs, but with leave to the defendant to apply for letters rogatory to examine these or other witnesses with respect to the matters concerning which the examination under the cross-interrogatories has not been satisfactory, if it shall be so advised. All concur.