THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KWOK CHAN, Appellant.

Second Department, September 16, 1985

**APPEARANCES OF COUNSEL**

*Daniel J. Gotlin* for appellant.

*John J. Santucci, District Attorney* (*Michael O'Brien* of counsel), for respondent.

**OPINION OF THE COURT**

THOMPSON, J.

Defendant's primary contention on appeal is that he was deprived of a full and fair opportunity to conduct a vigorous and thorough cross-examination of one of the two primary prosecution witnesses. A review of the record leads us to conclude that defendant was not deprived of his right to conduct a vigorous and thorough cross-examination of the witness in issue. Furthermore, in the course of his trial strategy, defendant knowingly and voluntarily waived any possible claim that the cross-examination was curtailed, if such could be deemed to have occurred. The jury received a full and fair presentation of the

conflicting positions of the parties, and there is no reason for this court to invoke its interest of justice jurisdiction to reverse the judgment of conviction.

On the morning of January 12, 1982, Chung Lung Cheng (Mr. Cheng) and Tung Cheng, his son, were leaving their family residence when they were forced back inside the house at gunpoint by two men and a woman. Kam Chai Cheng (Mrs. Cheng) and Belinda Cheng, one of the Cheng daughters, were home at the time. The family safe was opened, and $7,000 and jewelry were taken by the invaders. Tung Cheng was removed from the premises, and he was returned later that day only after Mr. and Mrs. Cheng, accompanied by two of their captors, withdrew $100,000 from a bank and surrendered the money for the safe return of their son. Following a jury trial at which both Mr. Cheng and Mrs. Cheng testified, defendant was convicted of committing the aforementioned acts. On appeal, defendant argues, *inter alia,* that he was deprived of the right to cross-examine Mrs. Cheng. We do not agree, and, accordingly, we affirm the judgment of conviction for kidnapping in the first degree, robbery in the first degree, burglary in the first degree, and grand larceny in the first degree.

During the course of the trial, prior to Mrs. Cheng testifying, the prosecution sought to call Belinda Cheng as a witness for the purpose of identifying defendant as one of the kidnappers for the jury. The prosecution, however, was not permitted to introduce this testimony. When Mr. and Mrs. Cheng testified at a *Wade* hearing which preceded the trial, Belinda waited outside the courtroom. She saw defendant come out of the courtroom at one point, and she commented to her sister that he had been one of the people who invaded the Cheng home. The trial court ruled that, as a result of this incident, the prosecution was required to give defendant notice of its intention to offer identification evidence pursuant to CPL 710.30, and that its failure to do so precluded Belinda from giving her identification testimony at the trial. The court refused the prosecution's request to adjourn the trial so that a *Wade* hearing could be conducted to determine if Belinda's identification of the defendant had been tainted by her viewing of defendant on the day of the earlier *Wade* hearing.

On the first day of Mrs. Cheng's trial testimony, she began recounting the events of January 12, 1982, and she identified defendant as one of the people who had invaded her home. As her second day of testimony commenced, Mrs. Cheng asked if she was a prisoner and stated that her husband had threatened her in order to compel her to appear. She also asked if she could

avoid appearing if she felt ill. At this point, the parties retired to the Judge's chambers.

During the ensuing discussion and questioning, Mrs. Cheng stated that she had been threatened by gangsters from Hong Kong, and she was asked questions about her allegation that her husband was protecting an "illegal person". She also expressed a reluctance to testify if she was not protected from the people who had threatened her. Defense counsel alleged that Mrs. Cheng had a history of suicide attempts, and that she had previously been diagnosed as schizophrenic. However, Mrs. Cheng stated that she could proceed, that she was not taking medication for a mental condition, and that she had been accused of being mentally disturbed by somebody who wished to take her property from her. The court spoke for approximately 15 minutes with an attorney who represented Mrs. Cheng on a matrimonial matter, and the attorney opined that she could proceed.

Defense counsel then moved for a mistrial based on Mrs. Cheng's alleged mental condition and her stated desire to avoid his questioning. The court granted the motion pursuant to CPL 280.10. The court also granted the prosecution's motion to conduct a *Wade* hearing prior to the retrial with regard to Belinda Cheng's ability to provide untainted identification testimony of the defendant at the retrial. At this point, defense counsel, obviously believing his client's chances for acquittal were better with Mrs. Cheng's testimony, rather than with Belinda Cheng testifying as a prosecution witness at the subsequent retrial, withdrew his mistrial motion, and the trial proceeded.

Prior to the resumption of Mrs. Cheng's testimony, defense counsel requested that her testimony be stricken or that she be examined by a psychiatrist with regard to her competency. The court stated that it would allow her to testify and would be guided by what followed. The court noted that until she actually testified "it's an anticipatory situation". When Mrs. Cheng resumed testifying, her testimony was beneficial to defendant. She stated she did not know if the people who entered her home had permission to do so. She could not state if defendant had accompanied her and Mr. Cheng to the bank. She testified that Fong, one of the people who went to the bank, "said that he wish [*sic*] to borrow the money and he will return the money including the interest". On cross-examination, she stated she was "[n]ot so certain" defendant had been in her house. Following her testimony, and not surprisingly in light of Mrs. Cheng's exculpatory testimony, defense counsel failed to renew his motion to strike her testimony or to have her examined by a psychiatrist. Accord-

ingly, that issue has not been preserved for this court to review as a matter of law (CPL 470.05 [2]).

Under these circumstances, defendant was not deprived of a fair trial because he had an adequate opportunity to conduct a vigorous and thorough cross-examination of Mrs. Cheng, and, in fact, did so. A person who is able to understand an oath and who is able to give a reasonably accurate account of what she has seen and heard with regard to the matters in issue may testify despite a history of mental illness, because mental illness is not, per se, a basis for disqualification from testifying (*People v Rensing,* 14 NY2d 210; *People v Barksdale,* 100 AD2d 852). The Trial Judge exercises his discretion in determining whether a person has the mental capacity to testify, and because he has the opportunity to observe the witness' manner, demeanor, and testimony and to undertake the requisite inquiries to determine the mental capacity of the witness, appellate courts should be hesitant in making their own determination based upon a cold record. As stated in *People v Parks* (41 NY2d 36, 46), "[i]mpressions that may be validly drawn only from closehand personal observation cannot be 'photographed into the record' for later study by appellate courts. (*Wheeler v United States,* 159 US 523, 525 * * *)". In this case, there is no reason to find an abuse of discretion in allowing Mrs. Cheng to testify. There is no indication in the record she failed to understand the oath she took prior to testifying. Furthermore, her testimony both at the pretrial *Wade* hearing and at the trial adequately recounted the events of the day in issue. After an extensive inquiry into Mrs. Cheng's mental state, during which she asserted she was not mentally ill and denied being on medication, and during which her attorney opined that she was capable of proceeding, the court, observing her demeanor, concluded that she was a competent witness. The record before this court does not provide a basis for disturbing this exercise of discretion.

Despite a generalized stated unwillingness to respond to questions from defense counsel, the record fails to reveal any instance where Mrs. Cheng simply refused to respond to a proper question. The dissent fails to cite a single specific instance in which defense counsel's questioning was limited in any way, or in which Mrs. Cheng failed to adequately respond during the cross-examination. In fact, her testimony was highly beneficial to defendant, and even the dissent, although at one point characterizing her testimony as "incriminating", concedes that her testimony cast doubt upon the prosecutor's entire case. Thus, it is not surprising that defense counsel did not seek to strike her testimony at its conclusion. Having used Mrs. Cheng's testi-

mony to bolster his defense, defendant may not now come to this court with a belated contention that his alleged inability to properly cross-examine Mrs. Cheng deprived him of a fair trial.

This analysis in no way requires speculation as to whether Mrs. Cheng's testimony helped defendant more than it hurt him or hurt him more than it helped him. We are in full agreement with the position that such speculation is at odds with the essence of cross-examination. We are simply asserting that the record fails to support a conclusion that Mrs. Cheng, regardless of whether her testimony hurt or helped defendant, was not subject to a full and thorough cross-examination.

The cases cited by the dissent are inapplicable to this case. In *People v Cole* (43 NY 508) and *Diocese of Buffalo v McCarthy* (91 AD2d 213), the witnesses gave their direct testimony and then became totally physically unavailable for cross-examination. That is simply not what happened in this case. In *People v Carter* (86 AD2d 451), the trial court gave instructions which had a chilling effect upon defense counsel's willingness to conduct a vigorous cross-examination. This, again, is not relevant to the instant appeal.

Furthermore, an affirmance is required because it is clear that defendant waived his rights. The right to confront witnesses may be waived (*United States v Armedo-Sarmiento,* 524 F2d 591). Defendant had been granted a mistrial in this case, but as a matter of trial strategy, defense counsel decided to forego the mistrial. He evidently concluded that it was to his client's benefit to permit the testimony of Mrs. Cheng to remain in the case. In stating that the right of cross-examination may be waived, Richardson, Evidence (§ 489, at 475 [Prince 10th ed]) gives as an example a circumstance where a witness becomes ill after his direct testimony and the defendant insists on proceeding with the trial rather than accepting a mistrial. That situation is more egregious than is our situation, since defense counsel did have a full opportunity to cross-examine Mrs. Cheng. As stated in Wigmore, Evidence (vol 5, § 1390, at 136 [Chadbourn rev 1974]) "Where * * * the failure to obtain cross-examination is in any sense attributable to the *cross-examiner's own consent or fault,* the lack of cross-examination is of course no objection — according to the general principle * * * that an opportunity, though waived, suffices".

The dissent alleges that defendant's choice was illusory. There is no suggestion by the dissent that it was improper to direct a *Wade* hearing prior to the commencement of a new trial (*see,* CPL 710.30 [2]) in the event of a mistrial with regard to Belinda

Cheng's potential identification testimony. In the absence of any explanation as to why it would have been improper to permit Belinda Cheng to be the subject of a *Wade* hearing to determine whether she could testify at a second trial, and in the absence of a motion to have Mrs. Cheng's testimony stricken or have her examined by a psychiatrist following the completion of her testimony, we simply fail to perceive the basis for the dissent's conclusion.

The dissent has expressed its concern about the fairness of the verdict. We believe that the verdict of the jury has ample support in the record. Accordingly, and in light of the lack of merit to defendant's remaining contentions, the judgment of conviction should be affirmed.

BRACKEN, J. (dissenting). The right of an accused to be confronted by the witnesses against him is a fundamental right of constitutional dimension (US Const, 6th, 14th Amends; NY Const, art I, § 6; *Douglas v Alabama,* 380 US 415; *Pointer v Texas,* 380 US 400; *People v Parker,* 57 NY2d 136, 139) which includes and guarantees the right of cross-examination (*Douglas v Alabama, supra,* at p 418; *People v Farruggia,* 77 AD2d 447, 451). Long ago, in *Alford v United States* (282 US 687, 692), the Supreme Court recognized that the right "to place the witness in his proper setting and put the weight of his testimony and his credibility to a test * * * [is] one of the safeguards essential to a fair trial". The law, in short, places primary reliance upon the right of cross-examination as an essential tool for ascertainment of the truth (*Davis v Alaska,* 415 US 308, 316; *United States v De Sisto,* 329 F2d 929, 934, *cert denied* 377 US 979; *see, United States v Abel,* 469 US __, 105 S Ct 465). Consequently, any significant abridgement of the right to conduct such cross-examination deprives a defendant of a fair trial and necessitates reversal, even in the absence of a showing of specific prejudice (*People v Carter,* 86 AD2d 451, 457-458). In this case, defendant's right to cross-examine a key prosecution witness was significantly curtailed. Accordingly, I would reverse the judgment of conviction and order a new trial.

Contrary to the assertions of the majority, the pertinent inquiry in this case is not whether Criminal Term improvidently exercised its discretion by permitting the witness, Mrs. Cheng, to testify. Regardless of Mrs. Cheng's mental health, her capacity to understand an oath or her ability to testify competently as to what she had seen or heard, the fact remains that she testified fully on direct examination and, thereafter, she exhibited an inability or unwillingness to submit to commensu-

rate cross-examination. As she took the stand for the second day of testimony, after having identified defendant on direct examination, Mrs. Cheng complained of illness, and stated that gangsters from Hong Kong had threatened her and her husband. She also claimed that her husband had threatened her in order to force her to appear in court despite her illness. At this point, Criminal Term held a conference outside the hearing of the jury in order to determine Mrs. Cheng's fitness to proceed. At the conference, Mrs. Cheng stated that she did not wish to answer any questions posed by defense counsel, nor did she even wish to be in the same room with him. There was also some discussion regarding the witness' prior history of treatment for mental illness. On the basis of the foregoing, defense counsel moved for a mistrial, and also to have Mrs. Cheng undergo a psychiatric examination, upon the ground that her refusal to proceed would deprive his client of his constitutional right to cross-examine her. Criminal Term granted the motion for a mistrial, recognizing the obvious prejudice that had accrued by reason of the witness' actions. However, before the jury was discharged, the court granted the prosecutor's application to conduct a *Wade* hearing prior to the retrial with respect to the identification testimony of Belinda Cheng. Faced with the prospect of having Belinda Cheng identify his client at a new trial, defense counsel had no choice but to withdraw his mistrial motion and proceed. When the trial resumed, defense counsel moved, *inter alia,* to strike Mrs. Cheng's testimony, which motion was denied. The court then instructed the witness to answer the questions posed to her, and she responded, "Don't ask me too much [*sic*] questions. I cannot recall so much". On limited cross-examination, Mrs. Cheng testified that she was "not so certain" that defendant was one of the men who had come into her home and committed the acts in question.

On this record, I must conclude that defendant suffered a significant abridgement of his right to cross-examine Mrs. Cheng and was thereby deprived of a fair trial. Where, as here, adequate cross-examination of a witness is precluded by an unjustified refusal of the witness to submit to cross-examination, or by illness, the witness' direct examination is rendered incompetent (*People v Cole,* 43 NY 508; *Diocese of Buffalo v McCarthy,* 91 AD2d 213, 220; *see generally,* Richardson, Evidence § 489 [Prince 10th ed]; Fisch, New York Evidence § 342 [2d ed]; 4 Zett, New York Criminal Practice ¶ 28.3 [3] [e]). Thus, in *People v Cole (supra),* the Court of Appeals held that where a witness became ill after direct examination so as to render cross-examination impossible, the trial court committed reversible

error by refusing to strike the direct examination (*People v Cole, supra,* at p 512).

In the case at bar, Criminal Term determined that Mrs. Cheng's refusal to be cross-examined by defense counsel would deprive defendant of a fair trial and, therefore, the court declared a mistrial (CPL 280.10 [1]). However, once defendant's motion for a mistrial had been withdrawn, the trial court erred in denying defendant's subsequent motion to strike the testimony given by Mrs. Cheng on direct examination. The denial of this motion was clearly prejudicial to defendant because Mrs. Cheng's direct testimony, where coherent, was incriminating; she and Mr. Cheng were the only witnesses who identified defendant at trial. Thus, her statement that she was being forced to testify by her husband, coupled with her admission during limited cross-examination that she was "[n]ot so certain" that defendant was one of the perpetrators of these crimes, served to cast doubt upon both the reliability of her own direct testimony and upon the prosecutor's entire case. Under these circumstances, Mrs. Cheng's inability or unwillingness to submit to a full and probing cross-examination by defense counsel rendered her direct testimony incompetent, and therefore it should have been stricken (*People v Cole, supra*).

Moreover, it is no answer that the defendant's Federally and State guaranteed rights of confrontation were not violated simply because some testimony unfavorable to the People was elicited from Mrs. Cheng, after she had identified the defendant. As noted by the Second Circuit in *United States v Harvey* (547 F2d 720, 723): "[e]xercise of [the right of confrontation] is particularly crucial where the witness offers damaging identification testimony, for in the absence of independent contrary evidence, a defendant must rely upon impeachment of the witness's credibility". To conclude that the defendant's rights were not violated under the circumstances present herein, requires speculation as to the comparative impact on the jury of Mrs. Cheng's identification testimony and her testimony which was unfavorable to the People. This conclusion also requires speculation as to what else, if anything, would have been disclosed had a meaningful opportunity to cross-examine this witness been presented. Such baseless surmise is at odds with the essence of the right of confrontation (*see, Davis v Alaska,* 415 US 308, 317; *Alford v United States,* 282 US 687, 692, *supra*). Once it has been determined that the accused has suffered a significant abridgement of his right to cross-examine, our inquiry should end, and we ought not to speculate as to what, if any, prejudice flowed therefrom (*see, People v Carter,* 86 AD2d 451, 457-458, *supra*).

Nor can I agree that the defendant waived his right to confrontation. Undoubtedly, the criminal law requires the accused to make difficult choices, many of which involve constitutional rights (*see, Bordenkircher v Hayes,* 434 US 357; *McGautha v California,* 402 US 183; *Matter of Lee v County Ct.,* 27 NY2d 432, *cert denied* 404 US 823). However, the choice required of the defendant in the case at bar, viz., to continue the first trial with Mrs. Cheng's testimony or to proceed with the second trial and the potentially more damaging identification testimony of Belinda Cheng, was tantamount to no choice at all. Waiver of rights cannot exist, the law has held, "where the choice given is not real, and amounts to a choice 'between the rock and the whirlpool'" (*United States v Calhoun,* 544 F2d 291, 296-297, quoting from *Garrity v New Jersey,* 385 US 493, 498). Moreover, even if defendant's choice to forego a mistrial is viewed as a waiver, it surely did not operate to waive his right to have Mrs. Cheng's direct testimony stricken, upon her failure to submit to full cross-examination, inasmuch as the motion to strike was made, and denied, after the mistrial motion had been withdrawn.

Finally, the record in the case at bar is shrouded in a mist of confusion surrounding Mrs. Cheng's testimony which, coupled with the troublesome manner in which this case proceeded, causes concern as to the fairness of the verdict. While it is true that all criminal defendants are entitled to a fair trial, not a perfect one (*People v Harris,* 84 AD2d 63, 110, *affd* 57 NY2d 335, *cert denied* 460 US 1047), I am not persuaded that, in the view of the confusion permeating this case, the defendant was afforded a fair trial. Accordingly, I cast my vote for reversal.

MOLLEN, P. J., and RUBIN, J., concur with THOMPSON, J.; BRACKEN, J., votes to reverse the judgment and order a new trial, in an opinion in which EIBER, J., concurs.

Judgment of the Supreme Court, Queens County, rendered August 2, 1983, affirmed.